**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**CHRISTOPHER SAUR,**

                              **Plaintiff,**                    **5:11-cv-1440**
                                                              **(GLS)**

              **v.**

**MICHAEL J. ASTRUE,**
The Commissioner of Social
Security,

                              **Defendant.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**FOR THE PLAINTIFF:**
McMahon, Kublick Law Firm                    JAN S. KUBLICK, ESQ.
500 South Salina Street
Suite 816
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN                    BENIL ABRAHAM
United States Attorney                       Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Christopher Saur challenges the Commissioner of Social Security's denial of his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Saur's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

### II. Background

On December 9, 2009, Saur filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since July 6, 2008. (*See* Tr.[1] at 58-59, 127-32.)[2]  After his applications were denied, (*see id.* at 62-73), Saur requested a hearing before an Administrative Law Judge (ALJ), which was held on March 31, 2011.  (*See id.* at 27-57, 74-75.)  On June 14, 2011, the ALJ issued an unfavorable decision denying the

_____

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 7.)

[2]  Saur subsequently amended his alleged onset date to July 31, 2008.  (*See* Tr. at 30.)

requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*See id.* at 1-6, 9-25.)

Saur commenced the present action by filing his Complaint on December 9, 2011 wherein he sought review of the Commissioner's determination.  (*See generally* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (*See* Dkt. Nos. 6, 7.) Each party, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 10, 12.)

### III.  Contents

Saur contends that the Commissioner's decision is tainted by the application of improper legal standards and is not supported by substantial evidence.  (*See* Dkt. No.10 at 5-12.)  Specifically, Saur claims that: (1) the ALJ erred by relying solely on the medical-vocational guidelines and not introducing the testimony of a vocational expert (VE); (2) the ALJ failed to follow the treating physician rule; (3) substantial evidence does not support the ALJ's decision; and (4) the ALJ improperly considered his subjective complaints of pain.  (*See id.*)  The Commissioner counters that the appropriate legal standards were used and substantial evidence supports

the ALJ's decision.  (*See* Dkt. No. 12 at 5-15.)

## IV.  Facts

The court adopts the parties' undisputed factual recitations.  (*See* Dkt. No. 10 at 1; Dkt. No. 12 at 1.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

### A.    Nonexertional impairments

First, Saur contends that the ALJ did not properly consider his "nonexertional impairment—namely, an adjustment disorder."  (Dkt. No. 10 at 5-6.)  According to Saur, the ALJ was required to consult with a VE to

---

[3] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical.  As such, parallel citations to the Regulations governing SSI are omitted.

determine whether he could perform other work, because "uncontradicted testimony indicates" that he suffers from such a disorder.  (*Id.* at 5.)  The court disagrees with Saur.

The appropriateness of applying "the grid guidelines and the necessity for expert testimony must be determined on a case-by-case basis." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).  Indeed, the ALJ is vested with discretion regarding whether to use a vocational expert.  *See* 20 C.F.R. § 404.1566(e).  But "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments" and, accordingly, the ALJ should consult with a VE before making a determination as to disability.  *Bapp*, 802 F.2d at 605 (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)).

Competitive, remunerative work generally requires the mental ability to: "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."  SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); *see* SSR

5

96-9p, 61 Fed. Reg. 34,478, 34,483 (July 2, 1996); SSR 85-15, 1985 WL 56857, at *4 (1985).  Thus, "[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base."  SSR 85-15, 1985 WL 56857, at *4.

Here, contrary to his contentions, Saur's ability to meet the demands of unskilled work are demonstrated by ample evidence in the record.  (*See* Dkt. No. 10 at 5.)  Specifically, Saur was examined by Dr. Dennis Noia who diagnosed him with adjustment disorder with mixed features and opiate abuse, in early full remission.  (*See* Tr. at 458.)  Based on this examination, Dr. Noia reported that Saur "appears to be having some difficulty dealing with stress," but was capable of understanding simple directions, performing simple and some complex tasks, sustaining attention and concentration, attending to a routine and maintaining a schedule, making appropriate decisions, and relating to and interacting with others.  (*Id.*)  In addition, state agency review psychologist A. Hochberg opined that Saur "retains the capacity for the performance of unskilled work" including the ability to understand, remember, and carry out simple instructions, respond to changes in the workplace, make simple work related decisions and respond appropriately to supervisors and coworkers.  (*Id.* at 732.)  Thus,

the ALJ's determination that Saur's ability to perform the demands of work was not limited by his adjustment disorder is supported by substantial evidence.[4]  (*See* Tr. at 17.)  Accordingly, the ALJ appropriately relied on the grid guidelines to determine the existence of other jobs in the national economy which Saur could perform. *See Bapp*, 802 F.2d at 605 ("If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate.").

**B.   Residual Functional Capacity**

Saur next argues that the ALJ erred in weighing his treating physician's opinion and, thus, the ALJ's determination that he can perform light work is unsupported by substantial evidence.  (*See* Dkt. No. 10 at 7-11.)  The Commissioner responds, and the court agrees, that the residual functional capacity (RFC) finding is supported by substantial evidence and was arrived at by properly applying the relevant legal principles.  (*See* Dkt. No. 12 at 7-11.)

A claimant's RFC "is the most [he] can still do despite [his]

---

[4] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

limitations." 20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).  An ALJ's RFC determination must be supported by substantial evidence in the record.  *See Frye ex rel. A.O. v. Astrue*, No. 11-1585-cv, 2012 WL 2125910, at *2 (2d. Cir. June 13, 2012).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

In this case, Dr. Stephen Robinson completed a medical source statement form and opined that, due to "chronic low back pain," Saur could occasionally lift ten pounds, frequently lift less than ten pounds, and, in an eight-hour workday, stand and/or walk for less than two hours and sit for less than six hours.  (Tr. at 765-66.)  Dr. Robinson further opined that Saur was limited in his ability to push and/or pull in both his upper and lower extremities and could occasionally climb stairs, but never balance, kneel, crouch, crawl, or stoop.  (*See id.* at 766.)  Finally, Dr. Robinson reported that Saur was limited in his ability to reach and handle and suffered from environmental limitations including temperature extremes, vibration, humidity/wetness, hazards, and fumes, odors, chemicals, and gases.  (*See*

8

*id.* at 767-68.)  The ALJ afforded Dr. Robinson's opinion little weight due to his limited treatment relationship with Saur[5] and because his exam notes did not support his restrictive opinion.  (*See id.* at 19.)  Based on the other evidence of record, including the opinions of treating physician Dr. Jeffery Kahn and consultative examiner Dr. Kalyani Ganesh, the ALJ determined that Saur retained the RFC to perform the full range of light work.[6]  (*See id.* at 17-18.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c).  Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  *Id.*

---

[5] The ALJ erroneously stated that Dr. Robinson had only treated Saur on two occasions, one of which was for the purpose of having him complete the Medical Source Statement.  (*See* Tr. at 19.)  The record reflects that Dr. Robinson examined Saur on three occasions, once each in January and February 2010, and again in January 2011 when Saur presented the Medical Source Statement form for Dr. Robinson to complete.  (*See id.* at 769-74, 777-79.)

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  In addition, "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday."  SSR 83-10, 1983 WL 31251, at *5-6 (1983)

§ 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Unless controlling weight is given to a treating source's opinion, the ALJ is

required to consider the following factors in determining the weight

assigned to a medical opinion: whether or not the source examined the

claimant; the existence, length and nature of a treatment relationship; the

frequency of examination; evidentiary support offered; consistency with the

record as a whole; and specialization of the examiner.  *See* 20 C.F.R.

§ 404.1527(c).

Here, because Dr. Robinson's opinion is inconsistent with other

substantial evidence in the record, the ALJ properly discounted it.  *See*

*Halloran*, 362 F.3d at 32.  Further, the ALJ considered the relevant factors

and properly explained her reasoning for the weight given to Dr.

Robinson's opinion.  *See* 20 C.F.R. § 404.1527(c).  Specifically, in

November 2008, Dr. N. Rehmatullah examined Saur for worker's

compensation purposes and opined that he could "do modified work where

he can sit and stand at his convenience with limited bending and lifting" of

not more than twenty pounds.  (Tr. at 781.)  Dr. Rehmatullah's examination

revealed that Saur could walk on his heels and toes, squat and rise, stand

erect and walk without a limp.  (*See id.* at 784.)  Further, Saur's range of

motion in his hips and knees was normal and neurologically he was intact

in his lower extremities.  (*See id.*)  Finally, he had a "mild limitation of

motion" in his lumbar spine.  (*Id.*)  The record also contains treatment notes

from Dr. Kahn representing six examinations from August 2008 through

January 2009.  (*See id.* at 301-12.)  Dr. Kahn referred Saur for a functional

capacity evaluation (FCE) which was conducted in December 2008.  (*See

id.* at 297-300.)  The results of the FCE indicated that Saur could work at a

Sedentary-Light physical demand level, which was defined as requiring

predominately sitting and standing and the ability to exert a force of fifteen

pounds occasionally, seven pounds frequently, and less than five pounds

on a constant basis.  (*See id.* at 298.)  The test revealed that Saur's

acceptable leg lift capability was thirty pounds, his twelve inch lift capability

was thirty pounds, his shoulder lift capability was twenty pounds, overhead

lift capability was ten pounds, carrying ability for thirty feet was fifteen

pounds, and pushing and pulling ability for thirty feet was seventy-five

pounds.  (*See id.* at 297.)

Finally, Dr. Ganesh examined Saur in March 2010 and opined that he

suffered a moderate limitation in lifting, carrying, pushing, and pulling, but

no gross limitation to sitting, standing, or walking.  (*See id.* at 461.)  Dr.

Ganesh noted that Saur was in no acute distress, his gait and stance were normal, he could walk on his heels and toes without difficulty, change for the exam and get on and off the exam table without assistance, and rise from a chair without difficulty.  (*See id.* at 460.)  Dr. Ganesh also found that Saur had full range of motion in his shoulders, elbows, forearms, and wrists bilaterally as well as in his hips, knees, and ankles.  (*See id.* at 461.)  Saur had full range of motion in his cervical spine, but a reduced range of motion in his lumbar spine.  (*See id.*)  Straight leg raising was negative and his neurological examination was normal.  (*See id.*)

In sum, the ALJ's RFC assessment is affirmed because she applied the appropriate legal standards in considering the medical opinions and arrived at an RFC that is supported by substantial evidence.

## C.    Credibility Determination

Next, Saur contends that the ALJ did not properly consider his pain. (*See* Dkt. No. 10 at 12.)  The Commissioner counters that the ALJ's credibility finding was legally sound and is supported by substantial evidence.  (*See* Dkt. No. 12 at 11-13.)  The court agrees with the Commissioner in this regard as well.

An ALJ must consider a claimant's subjective complaints of

limitations resulting from his impairments, including those from pain, in gauging his RFC.  *See* 20 C.F.R. § 404.1545(a)(3).  However, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."  42 U.S.C. § 423(d)(5)(A).  The Commissioner is obligated to evaluate all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a).

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7p, 61 Fed. Reg. at 34,485-86.  Thus, "after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility," an ALJ may reject the claimant's subjective allegations regarding pain as long as she sets forth her "reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence."  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here the ALJ's credibility determination—that Saur's statements concerning the intensity, persistence, and limiting effects of his symptoms

were only partially credible—is supported by substantial evidence in the record.  (*See* Tr. at 19.)  The ALJ made this determination after considering the objective medical evidence, opinion evidence, and Saur's testimony with respect to his symptoms, treatments, and activities of daily living. (*See id.* at 14-19.)  Although Saur testified that he can barely keep up with his household chores, lays down for hours during the day, can only cook things that are easy to make because of his inability to stand for long periods, and wants to work but feels that he would be unreliable due to his back pain, (*see id.* at 46-49, 51, 54), in a confidential health assessment completed by Saur in July 2010 he reported having no difficulty walking, standing, or sitting and only some difficulty climbing stairs and carrying, (*see id.* at 792).  He further reported that he could work full time despite his impairments.  (*See id.* at 793.)  Ultimately, Saur's subjective claims are not wholly credible, and, in finding as such, the ALJ properly weighed "the objective medical evidence in the record, [Saur's] demeanor, and other indicia of credibility." *Lewis*, 62 F. Supp. 2d at 651 (internal quotation marks and citation omitted).  Thus, the ALJ's credibility assessment is conclusive.

**D.   Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Saur's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

February 13, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

15